IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO

———————————————

LOUIS YANNI; ALFRED THOMPSON;
ANTHONY AND MYRNA GUNDERSON;
MARWAN ALSAYEGH; AND HANNAH SAYEGH,
INDIVIDUALLY AND ON BEHALF OF ALL
PERSONS SIMILARLY SITUATED,

*Plaintiffs/Appellants,*

*v.*

TUCKER PLUMBING, INC., AN ARIZONA CORPORATION;
BREWER ENTERPRISES, INC., AN ARIZONA CORPORATION,

*Defendants/Appellees.*

No. 2 CA-CV 2013-0024
Filed November 20, 2013

———————————————

Appeal from the Superior Court in Pinal County
No. CV201200476
The Honorable Gilberto V. Figueroa, Judge

**AFFIRMED**

———————————————

COUNSEL

Kasdan, Simonds, Weber & Vaughan, L.L.P., Phoenix
By Stephen L. Weber, Michael J. White, and James W. Fleming

*Counsel for Plaintiffs/Appellants*

Jones, Skelton & Hochuli, P.L.C., Phoenix
By Michael A. Ludwig, Lori L. Voepel, R. Christopher Pierce,
and Jonathan P. Barnes

*Counsel for Defendant/Appellee Tucker Plumbing, Inc.*

O'Connor & Campbell, Phoenix
By J. Daniel Campbell and Stephanie Van Splunder

Resnick & Louis, P.C., Scottsdale
By Mitchell J. Resnick and Michael G. Wales

*Co-counsel for Defendant/Appellee Tucker Plumbing, Inc.*

Welsh Law Group, P.L.C., Phoenix
By Kenneth W. Welsh and Keely Verstegen

*Counsel for Defendant/Appellee Brewer Enterprises, Inc.*
*Co-counsel for Defendant/Appellee Tucker Plumbing, Inc.*

Rai & Barone, Phoenix
By Adam B. Campbell and Shannon R. Guererro

*Co-counsel for Defendant/Appellee Brewer Enterprises, Inc.*

---

**OPINION**

---

Presiding Judge Kelly authored the opinion of the Court, in which Judge Espinosa and Judge Eckerstrom concurred.

---

K E L L Y, Presiding Judge:

**¶1** Louis Yanni and other similarly situated homeowners ("Yanni") appeal from the trial court's grant of summary judgment in favor of plumbing subcontractors Tucker Plumbing, Inc., and Brewer Enterprises, Inc. ("Subcontractors"). Yanni argues the court erred by concluding Subcontractors were not subject to suit for breach of the implied warranty of workmanship and habitability. For the following reasons, we affirm.

**Factual and Procedural Background**

**¶2** We view the facts in the light most favorable to the party against whom summary judgment was entered. *Villa de Jardines Ass'n v. Flagstar Bank, FSB*, 227 Ariz. 91, ¶ 2, 253 P.3d 288,

2

291 (App. 2011). Yanni filed a "construction defect state-wide class action"[1] against Subcontractors, who were hired by and performed plumbing work under a general contractor of new home construction. The complaint alleged Subcontractors had breached the implied warranty of workmanship and habitability by using defective plumbing components in the construction of plaintiffs' homes.[2] Specifically, Yanni alleged Subcontractors had "select[ed], construct[ed], assembl[ed], and install[ed] . . . brass plumbing fittings . . . not suitable for their service environment, . . . resulting in compromised plumbing systems that have prematurely corroded, occluded, leaked," and otherwise deteriorated. Yanni further alleged Subcontractors had "failed to follow acceptable construction and/or building practices" when installing plumbing in the homes.

¶3        Subcontractors moved for summary judgment, arguing in part that "only parties and privies to contracts can bring claims for breach of the implied warranty of workmanship and habitability." They argued that because Subcontractors contracted with a general contractor or developer to perform the work—and not with the homeowners—there was no contractual privity between the parties and suit should be barred as a matter of law.[3] Yanni filed a cross-motion for summary judgment, arguing that contractual privity is not required to maintain an action for breach of the implied warranty because the warranty "arises from the construction of the home as a matter of law."

_____

[1]Although Yanni describes this suit as a "class action," the trial court did not address whether the suit could be maintained as a class action pursuant to Rule 23(c), Ariz. R. Civ. P.

[2]We treat the implied warranty of workmanship and habitability as a single warranty. *See Nastri v. Wood Bros. Homes, Inc.*, 142 Ariz. 439, 444, 690 P.2d 158, 163 (App. 1984) (holding Arizona decisions make no significant distinction between workmanship and habitability), *rejected on other grounds by Flagstaff Affordable Hous. Ltd. P'ship v. Design Alliance, Inc.*, 223 Ariz. 320, 223 P.3d 664 (2010).

[3]Yanni concedes there was no privity between the homeowners and Subcontractors.

¶4        At the conclusion of a hearing on the motion and cross-motion, the trial court granted Subcontractors' motion for summary judgment.  Without ruling explicitly on the privity issue, the court stated there were other "[d]efendants in line," such as the builder, vendor, developer or contractor, that either were or should be "primary to" the Subcontractors and that there was an "issue of remoteness."[4]

**Discussion**

¶5        Yanni claims the trial court erred in granting Subcontractors' motion for summary judgment, which had argued that only parties and privies to contracts properly can bring claims for breach of the implied warranty of workmanship and habitability. Yanni maintains that contractual privity no longer is required in breach of implied warranty causes of action and that those "who actually *constructed* the homes' defective plumbing systems" should be held responsible for their work.  He therefore concludes the court's ruling should be reversed.

¶6        A trial court properly grants summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Ariz. R. Civ. P. 56(a); *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).  "'On appeal from summary judgment, we must determine de novo whether there are any genuine issues of material fact and whether the trial court erred in applying the law.'"  *Miidas Greenhouses, LLC v. Global Horticultural, Inc.*, 226 Ariz. 142, ¶ 5, 244 P.3d 579, 581 (App. 2010), *quoting Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, ¶ 8, 965

---

[4]At the same time, the trial court denied Yanni's cross-motion for summary judgment. Because the sole issue in both motions was whether privity is required, and because we conclude that it is, we do not review the court's denial of Yanni's cross-motion for summary judgment.  We also decline to grant oral argument as requested by Yanni in his opening brief.  Rule 18, Ariz. R. Civ. App. P., requires a party to file a separate instrument requesting oral argument on or before the earlier of the ten days after the reply brief is due or filed; Yanni filed no such document.

P.2d 47, 50 (App. 1998).  We consider only the evidence that was before the trial court during its summary judgment deliberations.  *GM Dev. Corp. v. Cmty. Am. Mortg. Corp.*, 165 Ariz. 1, 4, 795 P.2d 827, 830 (App. 1990).  We will uphold the court's ruling if summary judgment is correct for any reason.  *See Sanchez v. Tucson Orthopaedic Inst., P.C.*, 220 Ariz. 37, ¶ 7, 202 P.3d 502, 504 (App. 2008).

¶7        The doctrine of implied warranty of workmanship and habitability was determined to apply to new home construction in *Columbia Western Corp. v. Vela*, 122 Ariz. 28, 33, 592 P.2d 1294, 1299 (App. 1979).  In that case, the court held, "as to new home construction, . . . the builder-vendor impliedly warrants that the construction was done in a workmanlike manner and that the structure is habitable."[5]  *Id.*  "A claim for breach of the implied warranty sounds in contract."  *Lofts at Fillmore Condo. Ass'n v. Reliance Commercial Constr., Inc.*, 218 Ariz. 574, ¶ 5, 190 P.3d 733, 734 (2008); *see also Woodward v. Chirco Constr. Co.*, 141 Ariz. 514, 516, 687 P.2d 1269, 1271 (1984).  As our supreme court has affirmed, generally "'only the parties and privies to a contract may enforce it.'"  *Lofts*, 218 Ariz. 574, ¶ 5, 190 P.3d at 734, *quoting Treadway v. W. Cotton Oil & Ginning Co.*, 40 Ariz. 125, 138, 10 P.2d 371, 375 (1932).

¶8        In 1984, however, the court created a narrow exception to the contractual privity requirement by holding that subsequent homebuyers, despite the lack of contractual privity, could sue the homebuilder for breach of implied warranty.  *Richards v. Powercraft Homes, Inc.*, 139 Ariz. 242, 245, 678 P.2d 427, 430 (1984).  The court noted that latent defects are "just as catastrophic on a subsequent owner as on an original buyer" and "[b]ecause the builder-vendor is in a better position . . . to prevent occurrence of major problems, the costs of poor workmanship should be his to bear."  *Id.* at 245, 678 P.2d at 430.  The court thus held that contractual privity was not

---

[5]The court based its holding, in part, on the rationale that "[b]uilding construction by modern methods is complex and intertwined with governmental codes and regulations.  The ordinary home buyer is not in a position, by skill or training, to discover defects . . . which [are] usually covered up and not open for inspection."  122 Ariz. at 32, 592 P.2d at 1298, *quoting Tavares v. Horstman*, 542 P.2d 1275, 1279 (Wyo. 1975).

required for a subsequent homeowner to sue a builder-vendor for breach of implied warranty and that "any reasoning which would arbitrarily interpose a first buyer as an obstruction to someone equally deserving of recovery is incomprehensible." *Id.*

¶9 Our supreme court further expanded the exception to the privity requirement, albeit narrowly, in *Lofts at Fillmore Condominium Association*. In *Lofts*, the court addressed two issues — whether a non-vendor homebuilder gave an implied warranty of workmanship and habitability in a condominium conversion project, and whether residential homebuyers, who had no direct contractual relationship with the builder, could properly bring suit for breach of the implied warranty. 218 Ariz. 574, ¶¶ 7, 14, 190 P.3d at 735, 736. The court answered both in the affirmative. As to the first issue, it held that the builder gave an implied warranty by constructing the new homes, even though it was not also the vendor. *Id.* ¶¶ 13-14. In addressing the second issue, the court cautiously expanded the exception to the privity requirement to allow suit, holding that "[i]nnocent buyers of defectively constructed homes should not be denied redress on the implied warranty simply because of the form of the business deal chosen by the builder and vendor." *Id.* ¶ 17.

¶10 On appeal, Yanni first argues that contractual privity is not required to maintain an implied warranty claim. Relying on *Lofts*, Yanni argues that "implied warranty arises out of the *construction* of a new home," rather than contract, and the claim thus "naturally extends to and is properly asserted against [subcontractors] who actually worked on the home." Requiring contractual privity before a homeowner may bring suit for breach of implied warranty, he argues, "has been abolished in the new home setting." We disagree that *Richards* and *Lofts* changed the rule requiring privity to bring suit for breach of the implied warranty of workmanship and habitability under the circumstances present here.

¶11 Yanni correctly states that it is the construction of the home that gives rise to the subject matter of an implied warranty. *See Lofts*, 218 Ariz. 574, ¶ 13, 190 P.3d at 736 ("'It is the structure and all its intricate components and related facilities that are the subject matter of the implied warranty.'"), *quoting Moxley v. Laramie Builders,*

*Inc.*, 600 P.2d 733, 735 (Wyo. 1979). But nothing in *Richards* or *Lofts* suggests that this language permits a homebuyer to assert a breach of the implied warranty against any subcontractor that contributed to the home's construction in the absence of a contract between the homebuyer and the subcontractor. There is a distinction between the creation of an implied warranty by virtue of construction of a structure and the contractual relationship required to assert its breach as a cause of action. Although an implied warranty flows from the construction of a residence and applies to all of its individual components, the exceptions to the general privity requirement found in *Richards* and *Lofts* have never been extended to a homebuyer's claims against a builder's subcontractors. Yanni has not alleged any contractual relationship between homeowners and Subcontractors, nor does he provide any evidence establishing a disputed issue of material fact on this point. *See Bothell*, 192 Ariz. 313, ¶ 8, 965 P.2d at 50.

¶12      Citing Arizona's "strong public policy of protecting innocent home purchasers," Yanni further urges this court to hold those who "actually construct" the home accountable for their work, regardless of the contractual relationship. However, the policy reasons for creating the privity exceptions in *Richards* and *Lofts* are not present in this case. In both of those cases, the court recognized that homes can be constructed and sold pursuant to different business arrangements, and it rejected the idea that the type of purchase arrangement could bar a homebuyer from obtaining a remedy for defective home construction. In *Richards*, plaintiffs included homebuyers who had purchased repossessed homes from a finance company, rather than the builder. 139 Ariz. at 243, 678 P.2d at 428. The court determined that precluding a subsequent homeowner from suing a builder for breach of implied warranty based on lack of privity could "encourage sham first sales to insulate buyers from liability." *Id.* at 245, 678 P.2d at 430. Similarly, in *Lofts*, the court determined that "[i]nnocent buyers of defectively constructed homes should not be denied redress on the implied warranty simply because of the form of the business deal chosen by the builder and vendor." 218 Ariz. 574, ¶ 17, 190 P.3d at 736.[6]

---

[6]The courts also noted more general policy concerns, such as protecting innocent and less knowledgeable homebuyers and

Concerns over depriving homebuyers of a remedy for defective home construction based on arbitrarily chosen business forms, however, are not present in this case.

**¶13**        Nothing in this decision precludes Yanni from pursuing relief for any deficiencies in Subcontractors' work. As noted by our supreme court in *Lofts*, a party who is not permitted to bring an implied warranty cause of action against a subcontractor still may sue a developer, general contractor, or vendor, who may then seek indemnity from other responsible parties or assign its claim to the plaintiff. 218 Ariz. 574, ¶ 18, 190 P.3d at 737, *referring to Webb v. Gittlen*, 217 Ariz. 363, ¶ 6, 174 P.3d 275, 276 (2008) (unliquidated non-personal injury claims are generally assignable); *see also Highland Village Partners, L.L.C. v. Bradbury & Stamm Constr. Co.*, 219 Ariz. 147, ¶ 12, 195 P.3d 184, 187 (App. 2008) (implied warranty rights can be assigned to third party); *Sullivan v. Pulte Home Corp.*, 232 Ariz. 344, ¶¶ 13-14, 306 P.3d 1, 3 (2013) (neither statute of repose nor economic loss doctrine bars tort claims brought against builders by non-contracting homeowners). We thus reject Yanni's argument that *Lofts* and *Richards* "ha[ve] abolished [the privity requirement] in the new home setting." *See Chaurasia v. Gen. Motors Corp.*, 212 Ariz. 18, ¶ 19, 126 P.3d 165, 172 (App. 2006) ("[W]e leave any further expansion of *Richards* to the Arizona Supreme Court.").[7]

---

holding builders accountable for their work, as driving forces behind creating the privity exceptions in those cases. *See Lofts*, 218 Ariz. 574, ¶ 16, 190 P.3d at 736; *Richards*, 139 Ariz. at 245, 678 P.2d at 430.

[7]Other jurisdictions also have declined to permit homebuyer suits against subcontractors for breach of the implied warranty in the absence of privity. *See Vonholdt v. Barba & Barba Constr., Inc.*, 657 N.E.2d 1156, 1158-59 (Ill. App. Ct. 1995) (cause of action for breach of implied warranty does not extend beyond action against builder-vendor of new residence); *Moglia v. McNeil Co.*, 700 N.W.2d 608, 614 (Neb. 2005) (subcontractor not liable in absence of contractual privity); *Cox v. Curnutt*, 271 P.2d 342, 344 (Okla. 1954) (cement subcontractor not liable to homeowners for breach of implied warranty because no contractual privity); *Pugh v. Gen. Terrazzo Supplies, Inc.*, 243 S.W.3d 84, 89-90 (Tex. App. 2007) (homeowner

¶14     Yanni also argues that definitions in certain Arizona statutes indicate that "Arizona's public policy . . . recognizes implied warranty claims against subcontractors." Yanni maintains that the Purchaser Dwelling Act ("PDA"), A.R.S. §§ 12-1361 through 12-1366, and Arizona's construction defect statute of repose, A.R.S. § 12-552, require us to conclude Subcontractors are "seller[s]" of a "dwelling" and, thus, properly can be sued for breach of implied warranty. But the definitions and provisions of both the PDA and the statute of repose establish notification procedures and time limits that govern suits by homeowners against contractors and developers. Neither creates a cause of action. Breach of the implied warranty cause of action is a judicially created doctrine rooted in contract, and its scope is not affected by either the PDA or the statute of repose.

¶15     For similar reasons, we disagree with Yanni's argument that because the Registrar of Contractors ("ROC") "does not require privity . . . in enforcement actions," we also should decline to require privity for implied warranty actions. The ROC permits a dissatisfied homeowner to file a complaint with the ROC as an alternative to litigation. A.R.S. §§ 32-1155 through 32-1157. As with the PDA and statute of repose, however, this is a statutorily created alternate remedy that does not affect our implied warranty analysis.

### Disposition

¶16     For the foregoing reasons, we affirm.

---

may not recover for breach of implied warranty action against subcontractor in absence of contractual relationship). *But see Minton v. Richards Grp. of Chi.*, 452 N.E.2d 835, 837 (Ill. App. Ct. 1983) (implied warranty cause of action available against subcontractor when builder-vendor had dissolved and was insolvent and innocent buyer had no recourse).